## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

## IN ADMIRALTY

UNITED STATES OF AMERICA,

      Plaintiff,

          v.

WATER QUALITY INSURANCE
SYNDICATE,

      Defendant/Third-Party Plaintiff,

          v.

THE UNITED KINGDOM MUTUAL
STEAM SHIP ASSURANCE
ASSOCIATION LIMITED,

        Third-Party Defendant.

_____/

Case No. 8:22-cv-2158-TPB-CPT

## ORDER GRANTING IN PART AND DENYING IN PART "THIRD-PARTY DEFENDANT'S MOTION TO DISMISS THE COMPLAINT, COMPEL ARBITRATION OR, IN THE ALTERNATIVE, BIFURCATE THE THIRD-PARTY CLAIMS"

This cause comes before the Court on "Third-Party Defendant's Motion to Dismiss the Complaint, Compel Arbitration or, in the Alternative, Bifurcate the Third-Party Claims." (Doc. 29). Defendant/Third-Party Plaintiff Water Quality Insurance Syndicate ("WQIS") responded in opposition. (Doc. 33). After reviewing the motion, responses, relevant authorities, court file, and record, the Court finds as follows:

**Background**

This lawsuit involves a claim under the Oil Pollution Act of 1990 ("OPA")

brought by the United States of America against WQIS as guarantor of Bouchard

Transportation Co., Inc., the operator of Barge 285.[1]  (Doc. 1).  WQIS is an

unincorporated association of marine insurers providing insurance of pollution risks

that agreed to provide a financial responsibility guaranty for Bouchard as the owner

of Barge 285.  (Doc. 8, Ex. A).  The OPA makes responsible parties and their

guarantors liable for oil removal costs from vessels that pose a substantial threat of

discharge of oil.  33 U.S.C. §§ 2702(a), 2716(f).  To operate a barge to transport oil in

United States' waters, Bouchard was required to provide evidence of financial

responsibility to meet its potential liabilities under OPA.  *See* 33 U.S.C. § 2716; 33

C.F.R. Part 138.

The United Kingdom Mutual Steam Ship Assurance Association Limited

("UK Club") is a mutual protection and indemnity association organized and

headquartered in the United Kingdom, that provides insurance coverage to

shipowners with respect to certain maritime risks.  The UK Club provides coverage

to its members for oil pollution liabilities and, in this instance, provided marine

protection and indemnity ("P&I") insurance coverage to Bouchard and Barge 285.

The UK Club provides its P&I insurance coverage to its members, including

Bouchard, pursuant to a "Certificate of Entry."  (Doc. 29-2, Declaration of Thomas

M. Rittweger ("Rittweger Decl."), Ex. 1).  The UK Club's Certificate of Entry

---

[1]  The OPA defines a "guarantor" as "any person, other than the responsible party, who provides evidence of financial responsibility for a responsible party under this Act."  33 U.S.C. § 2701(13).

identifies the insured as the "member," lists the member's vessel that is entered for coverage, and outlines the scope of P&I insurance coverage, which otherwise is subject to the UK Club's Rules – a corresponding set of general terms and conditions that apply to all members. (*Id.*, Ex. 2). Coverage under the UK Club's Rules is subject to several defenses.

During the period when WQIS acted as guarantor and the UK Club insured Barge 285, the United States Coast Guard Captain of the Port in Tampa, Florida declared Barge 285 a potential hazard, imposed several conditions before Barge 285 would be permitted to move, and barred Barge 285 from operating or carrying cargo or petroleum products due to several expired or lapsed certifications. After several denied requests to move, Coast Guard personnel visited Barge 285 over the course of two days, and, after inspection, the Coast Guard again denied the request to move. The Coast Guard then issued: (1) a Notice of Federal Interest to Bouchard, stating that a pollution incident occurred or threatened to occur in East Bay, Tampa, Florida, and (2) Administrative Order 003-19, advising Bouchard that the Coast Guard determined that Barge 285 presented a substantial threat of discharge of crude oil, diesel, fuel, and hydrocarbons. Although Bouchard complied with some of the requirements of the order, it failed to comply with all the requirements and did not seek an extension.

Given Bouchard's unsatisfactory efforts to abate or mitigate the pollution threat, the Coast Guard issued a Notice of Federal Assumption and assumed responsibility under the Federal Water Pollution Control Act on June 16, 2019, for the removal of more than 147,960 gallons of petroleum products from Barge 285.

The Coast Guard determined removal of the petroleum products was necessary because a substantial threat of discharge into an environmentally sensitive area of Tampa Bay, Florida existed.  Per the Government, the oil removal actions took approximately three months to complete at a cost of $6,202,516.27, and, as of the filing of the complaint, Bouchard had not reimbursed the Coast Guard for such costs.

On September 28, 2020, Bouchard filed for bankruptcy under Chapter 11, which was converted to a Chapter 7 proceeding, with liquidation of Bouchard's assets occurring thereafter.  The Coast Guard filed a proof of claim in Bouchard's bankruptcy proceeding, but the claim has not been paid.  Consequently, on September 16, 2022, the Government filed this lawsuit under OPA against WQIS, as the guarantor of Bouchard's liabilities, seeking reimbursement for the oil pollution removal costs already paid by the federal Oil Spill Liability Trust Fund in the amount of $6,202,516.27.

WQIS subsequently filed its answer, denying liability and setting forth claims in a third-party complaint against the UK Club.  (Doc. 8).  WQIS's third-party complaint asserts:  (1) a claim for a declaratory judgment for indemnity for any amounts WQIS may be held liable to pay the Government, and (2) a claim for unjust enrichment.  WQIS's third-party complaint also tenders the Government's claims to the UK Club for defense and indemnity pursuant to Rules 14(c)(1) and (2), Federal Rules of Civil Procedure.

In response, the UK Club filed a motion to dismiss any claims set forth against it in the Government's complaint, to stay consideration of the third-party

complaint, and to either compel arbitration of the third-party claims in London, England, or to bifurcate the third-party claims and hold them in abeyance until WQIS's liability has been determined as to the Government's claims.  (Doc. 29). WQIS responded in opposition.[2]  (Doc. 33).  The UK Club then filed a reply.  (Doc. 38).  After WQIS and the UK Club fully briefed the issues, the Court held oral argument.

## Discussion

In its motion, the UK Club argues that WQIS stands entirely in the shoes of Bouchard in suing the UK Club and claiming the benefits of its P&I insurance coverage.  Accordingly, the UK Club asserts that pursuant to Rule 40 of the UK Club's rules, it is entitled to demand arbitration of WQIS's claims, and any policy defenses the UK Club has to those claims, in England.  If the Court declines to compel arbitration, the UK Club requests that the Court bifurcate WQIS's claims and hold them in abeyance until the Court determines WQIS's liability to the Government.  To the extent Rule 14(c)(1) requires the UK Club to also defend the claims made by the Government in the original complaint, the UK Club alleges the complaint should be dismissed because the Government has no direct right of recovery against the UK Club.

### *Motion to Compel Arbitration*

The primary disagreement between the parties lies in whether to compel arbitration in England.  According to the UK Club, both the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T.

---

[2] The Government did not file anything in support of or opposition to the UK Club's motion.

2517, T.I.A.S. No. 6997 (the "New York Convention"), and federal maritime law require WQIS to arbitrate its third-party claims in England.  Essentially, the UK Club argues that, since WQIS seeks to enforce the terms of the insurance contract between Bouchard and the UK Club, and since WQIS's claims fall within the scope of the arbitration provision in the UK Club's Rule 40, WQIS has embraced the Bouchard-UK Club contract such that it is estopped from repudiating the contract's arbitration clause.

In response, WQIS argues that it has not consented to arbitrate a dispute with the UK Club, so as a non-signatory to the Bouchard-UK Club contract, it cannot be compelled to arbitrate its claims under Rule 40.  WQIS also contends that it received no direct benefit from the Bouchard-UK Club agreement and is therefore not bound by direct benefits estoppel.

The New York Convention

The New York Convention – of which the United States and the United Kingdom are contracting states – incorporates the entire Federal Arbitration Act ("FAA") and governs cases where, as here, a party seeks to compel arbitration outside of the United States.  *See Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 601 F. 3d 329, 332 n.4 (5th Cir. 2010).  In deciding a motion to compel arbitration under the New York Convention, the Court conducts a very limited inquiry, starting with a strong presumption in favor of enforcing arbitration agreements.  *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1275 (11th Cir. 2011).

A district court must order arbitration unless the four jurisdictional prerequisites under the New York Convention are not met or one of the New York

Convention's affirmative defenses applies. *Bautista v. Star Cruises,* 396 F.3d 1289, 1294-95 (11th Cir. 2005).[3]  Accordingly, the Court's inquiry is limited to considering these four jurisdictional prerequisites: (1) whether there is a written agreement to arbitrate; (2) whether the agreement provides for arbitration in the territory of a New York Convention signatory; (3) whether the agreement arises out of a legal, commercial relationship; and (4) whether one or more of the parties to the agreement is not an American citizen or the commercial relationship has some reasonable relation with a foreign state.  *See id.* at 1294 n.7; *Francisco v. Stolt Achievement MT,* 293 F.3d 270, 273 (5th Cir. 2002); *Milic v. Princess Cruise Lines, Ltd.,* No. 21-cv-22969-Civ-Scola, 2021 WL 5037406, at *1 (S.D. Fla. Sept. 24, 2021).

WQIS does not dispute that the UK Club satisfied the second and fourth prerequisites – namely, that the UK Club's Rule 40 provides for arbitration in London, England, which is within the territory of a New York Convention signatory, and that the UK Club is not an American citizen.  Rather, WQIS argues that the arbitration provisions are only applicable to Bouchard and the UK Club – not to disputes between non-signatories – and cannot be used to force arbitration of independent causes of action against the UK Club.

Notwithstanding WQIS's arguments to the contrary, the Court finds that the UK Club satisfied the first and third prerequisites.  As to the first prerequisite, the Court finds that although there is no written agreement between WQIS and the UK Club, the Certificate of Entry and the UK Club's Rules (comprising the Bouchard-UK Club marine insurance policy) constitute an agreement in writing to arbitrate

---

[3]  Neither WQIS nor the UK Club argue that one of the affirmative defenses applies.

disputes.  (*See* Rittweger Decl., Ex. 1-2).  *See Fisser v. Int'l Bank*, 282 F.2d 231, 233

(2d Cir. 1960) (finding a written provision in any maritime transaction to settle by

arbitration any controversy arising out of such transaction as the sine que non of an

enforceable arbitration agreement and noting that parties can be contractually

bound absent their signatures).  Indeed, "federal courts have long held that so long

as there is *some* written agreement to arbitrate, a third party may be bound to

submit to arbitration."  *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347,

355 (5th Cir. 2003) (emphasis in original).  Given the written agreement to

arbitrate, the UK Club met the first prerequisite.

As to the third prerequisite, the Court finds that the arbitration agreement in

the UK Club Rules arises out of a legal, commercial relationship, wherein the UK

Club issued a marine insurance policy and provided marine insurance coverage to

Bouchard.  *See, generally, Montauk Oil Transp. Corp. v. Steamship Mut.*

*Underwriting Ass'n (Bermuda) Ltd.*, 79 F.3d 295, 296 (2d Cir. 1996); *Triton Lines,*

*Inc. v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 707 F. Supp. 277, 278

(S.D. Tex. 1989).  The scope of coverage available under that legal, commercial

relationship is at issue herein.  Accordingly, the UK Club satisfied all prerequisites

under the New York Convention.

<u>The FAA</u>

Under the FAA, the Court must answer two separate questions when

deciding whether to compel arbitration.  Initially, the Court must determine

whether a valid arbitration agreement exists that binds the litigating parties.  *Todd*

*v. Steamship Mut. Underwriting Ass'n, Ltd.,* No. 08–1195, 2011 WL 1226464, at *4

(E.D. La. Mar. 28, 2011).  Second, the Court must determine whether the arbitration agreement applies to the claims asserted by WQIS.  *Id.*  Before addressing these questions, the Court must determine which law applies to each question.  The Court finds that federal maritime law governs the first, while English law governs the second.

The interpretation of a marine insurance policy, like the one at issue, gives rise to federal admiralty jurisdiction.  *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 996 F.3d 1161, 1164 (11th Cir. 2021).  "When analyzing a choice of law issue, federal courts apply the choice of law rules of the forum."  *Authenment v. Ingram Barge Co.*, 878 F. Supp. 2d 672, 679 (E.D. La. 2012).  As this Court sits in admiralty, federal maritime law is the law of the forum, and the Court therefore applies federal choice of law rules.  *See id.*

Under federal maritime choice of law principles, choice of law provisions are generally enforceable.  *Id.*  The chosen law of the parties applies only to substantive questions, while the law of the forum applies to procedural questions.  *Id.*  Whether a valid arbitration agreement exists is a procedural question, and the Court will apply the law of the forum, or federal maritime law, to answer this question.[4] Under federal maritime law, the question of whether a nonsignatory may be bound to arbitrate is a procedural question for which the law of the forum applies.  *Id.* at 679-80.

---

[4] During oral argument, the parties agreed that federal maritime law applies to the question of whether a valid arbitration agreement exists.  They also expressed that Florida law and federal maritime law are not materially different such that federal maritime law and Florida law yield the same result.

"Generally, in the arbitration context, equitable estoppel allows a nonsignatory to a written agreement containing an arbitration clause to compel arbitration where a signatory to the written agreement must rely on the terms of that agreement in asserting its claims against the nonsignatory." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S.Ct. 1637, 1644 (2020) (quotation and citation omitted). To that end, under the FAA, a nonsignatory may rely on state-law equitable estoppel doctrines to enforce an arbitration agreement. *Id.* (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631-32 (2009)).[5]

Under federal maritime law, a non-signatory may be bound to an arbitration agreement under a theory of direct benefits estoppel where the "nonsignatory knowingly exploits the agreement containing the arbitration clause." *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 518 (5th Cir. 2006) (quoting *Bridas*, 345 F.3d at 361-62) (internal quotation omitted); *see InterGen N.V. v. Grina,* 344 F.3d 134, 145-148 (1st Cir. 2003); *Kakawi Yachting, Inc. v. Marlow Marine Sales, Inc.*, No. 8:13-cv-1408-T-TBM, 2014 WL 12650701, at *4-5 (M.D. Fla. October 3, 2014); se*e also Escobal v. Celebration Cruise Operator, Inc.*, 482 F. App'x 475, 476 (11th Cir. 2012) (per curiam). Because WQIS is seeking payment and indemnity from the UK Club for amounts it may be held liable to pay to the Government, WQIS is thereby seeking to exploit the terms of the insurance contract between the UK Club and Bouchard, has embraced that contract, and seeks direct benefits

---

[5] The equitable estoppel doctrines permitted under the FAA do not conflict with the New York Convention, and nothing in the text of the New York Convention could be read to prohibit the application of domestic equitable estoppel doctrines. *Id.* at 1644-45.

under the policy.  WQIS is therefore estopped from repudiating the contract's

arbitration clause and, instead, is bound by it.  Accordingly, the Court finds that

there is a written agreement to arbitrate, and WQIS is bound under that agreement

under direct benefits estoppel.

The question of whether the claims in this case fall within the scope of the

arbitration agreement is a substantive one, meaning English law governs.  *See*

(Rittweger Decl., Ex. 2, at 100, Rule 42); *Authenment*, 878 F. Supp. 2d at 678-80.[6]

Here, the UK Club's 2019 Rules are applicable, and Rule 40 directs the parties to

arbitration "if any other difference or dispute shall arise between an Owner *or any*

*other person* and the Association out of or in connection with these Rules or any

contract between the Owner and the Association or as to the rights or obligations of

the Association or the Owner or any other person thereunder or in connection

therewith."  (Rittweger Decl., Ex. 2, at 96, Rule 40) (emphasis added).  Rule 40 does

not permit an Owner or any other person to maintain any action, suit, or other legal

proceeding against the UK Club upon any such difference or dispute without first

going through the procedures set forth in Rule 40.  (*Id.*; Doc. 37, March 15, 2023

Further Declaration of Andrew David Taylor, ¶7).[7]

---

[6]  Courts can enforce choice-of-law clauses even if the substantive law applied in arbitration in the foreign forum potentially provides reduced remedies or fewer defenses than those available under the laws of the United States.  *Lindo*, 652 F.3d at 1269.  Further, even if a contract expressly states that foreign law governs, courts should not invalidate an arbitration agreement at the enforcement stage based on speculation about what the arbitrator will do, as the arbitral award may subsequently be reviewed.  *Id.*

[7]  Taylor indicates that WQIS would stand in the shoes of Bouchard for purposes of its claims in the third-party complaint and can therefore pursue any potential prerequisites to arbitration under Rule 40 in that capacity.  (*Id.*, ¶5).

According to the unrebutted declaration of Andrew D. Taylor, the UK Club's proffered expert on English law, the claims WQIS has alleged against the UK Club are clearly within the scope of the arbitration agreement set forth in Rule 40, as all WQIS's claims against the UK Club arise from the P&I policy Bouchard had with the UK Club. (Doc. 29-1, January 13, 2023 Declaration of Andrew David Taylor, ¶¶15-16).[8]   In fact, WQIS alleges that the UK Club policy provides coverage for all the damages sought by the Government referenced in the third-party complaint and that it is entitled to recover under the policy.  WQIS effectively claims it would be subrogated to Bouchard's rights and entitled to a defense and indemnity from the UK Club for any payment WQIS makes to the Government.

Based on Taylor's declarations, the Court finds that the reference to "any difference or dispute" in Rule 40 is an "extremely broad and all-encompassing dispute resolution provision" under English law and encompasses all of WQIS's third-party claims.  Arbitration of WQIS's claims against the UK Club therefore is required.  Given these circumstances, WQIS must arbitrate its claims against the UK Club under Rule 40 of the UK Club Rules in London, England.  *See* 9 U.S.C. § 206.  Under these circumstances, a stay of the claims asserted in this case against the UK Club pending the outcome of the London arbitration is mandatory.  *See* 9 U.S.C. § 3; *Katz v. Cellco P'ship*, 794 F.3d 341, 345-46 (2d Cir. 2015); *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004).

---

[8]  Under the Federal Rules of Civil Procedure, "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."  Fed. R. Civ. P. 44.1; *see also Animal Sci. Prods., Inc. v. Hebei Welcome Pharm. Co. Ltd.*, 138 S. Ct. 1865, 1873 (2018).

***Motion to Dismiss***

The UK Club next argues that the Government's complaint must be dismissed for failure to state a claim under Rule 12(b)(6) to the extent that the complaint alleges claims against the UK Club under Rule 14(c).[9]  To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Accordingly, only a complaint that states a plausible claim for relief will survive a motion to dismiss. *See id.* at 679.

Mainly, the UK Club contends that dismissal is warranted because the Government admitted during oral argument that it maintains no independent right of action against the UK Club and therefore cannot assert any claims directly against the UK Club in this action.  Indeed, during the hearing, the Government indicated, "We would have no cause of action against the UK Club independently." (Doc. 48, May 28, 2023 Hr'g Tr., at 41).  The Government further stated that it perceived the issues between WQIS and the UK Club as a "sidebar" to the claims it seeks to pursue in this action and that it was eager to pursue its claims "against whomever." (*Id.*, at 30, 41).  Besides these statements, the Government offered no written brief or other explanation addressing any of the matters at hand.

---

[9]  The UK Club also seeks dismissal under Rule 12(c).  However, judgment on the pleadings under Rule 12(c) is not available since the UK Club has only filed a motion to dismiss, not an answer. *See Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1337 (11th Cir. 2014) ("When a defendant fails to answer, Rule 12(c) precludes a judgment on the pleadings because the pleadings have not yet closed, and competing pleadings do not exist.").

Regardless of the Government's position or apparent indifference, WQIS's third-party complaint explicitly invokes the provisions of Rule 14(c).  (Doc. 8, Third-Party Complaint, ¶5).  Rule 14(c) provides a mechanism for a third-party plaintiff in an admiralty or maritime action to bring in a third-party defendant who may be wholly or partially liable either to the plaintiff or the third-party plaintiff for the damages.  Fed. R. Civ. P. 14(c)(1).  The third-party plaintiff may then demand judgment in the plaintiff's favor against the third-party defendant, after which "the third-party defendant must defend under Rule 12 against the plaintiff's claim as well as the third-party plaintiff's claim; and the action proceeds as if the plaintiff had sued both the third-party defendant and the third-party plaintiff."  Fed. R. Civ. P. 14(c)(2).

To create a more efficient administration of justice, Rule 14 reduces the litigation by having one lawsuit do the work of two.  *Cincinnati Specialty Underwriters Ins. Co. v. Code 3 Sec. & Prot. Servs., Inc.* No. 8:16-cv-127-T-30TBM, 2016 WL 2759152, at *2 (M.D. Fla. May 12, 2016).  "In admiralty cases, courts interpreting Rule 14(c)(2) have found that a third-party defendant must defend against a plaintiff's claims, even where the plaintiff did not raise a direct claim against the third-party defendant."  *Goodloe Marine, Inc. v. Caillou Island Towing Co., Inc.*, No. 8:20-cv-679-JLB-AAS, 2021 WL 5051983, at *4 (M.D. Fla. Nov. 1, 2021) (citing *Peter Fabrics, Inc. v. S.S. Hermes*, 765 F.2d 306, 313 (2d Cir. 1985)).  The fact that the original plaintiff does not seek to independently hold the third-party defendant liable is immaterial.  *Id.*

Here, WQIS properly impleaded the UK Club under Rule 14(c), as the UK

Page 14 of 17

Club may be liable to the Government for the claims the Government asserted in this action.  Neither WQIS nor the UK Club argue that the Government failed to state a plausible claim under the OPA.  Accordingly, no basis exists for dismissing the Government's claims as to the UK Club.  The motion to dismiss is denied.

Since the Government's claims will proceed against the UK Club, the Court denies the UK Club's request to stay the arbitration to allow the Government to proceed on its claims against WQIS.  Rather, the more appropriate course of action appears to be entry of a stay as to both the Government's claims and WQIS's claims in this action in favor of arbitration.  *See Arthur Andersen*, 556 U.S. at 631 (indicating that 9 U.S.C. § 3 states that stays are required if the claims are referable to arbitration under an agreement in writing, and, if a written arbitration provision is made enforceable against or for the benefit of a third party, the statutes terms are fulfilled); *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (stating that the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration where there is an enforceable arbitration agreement and the claims fall within the scope of that agreement); 9 U.S.C. § 3.

### *Motion to Bifurcate*

Finally, the UK Club alternatively asks the Court to bifurcate and hold in abeyance WQIS's claims.  The UK Club posits that the Court does not need to determine whether the UK Club is liable for any coverage until it determines whether WQIS is liable to the Government.  Since the UK Club sought to bifurcate only if the Court denied its motion to compel arbitration, the Court's granting of that motion appears to moot the issue.

To the extent that the UK Club seeks to renew its request to bifurcate, the Court is not inclined to grant such relief.  Under Rule 42, a district court may order a separate trial of one or more separate issues, claims, or third-party claims for convenience, to avoid prejudice, or to expedite and economize.  Fed. R. Civ. P. 42(b). While the Court may consider several factors in making that determination, a fair and impartial trial to all litigants remains the paramount consideration.  *Kimberly-Clark Corp. v. James River Corp. of Va.*, 131 F.R.D. 607, 608-09 (N.D. Ga. 1989) (listing factors).

The Court maintains broad discretion in determining whether to bifurcate. *Harrington v. Cleburne Cnty. Bd. of Educ.*, 251 F.3d 935, 938 (11th Cir. 2001).  In this instance, both the first-party and third-party claims require consideration of the same facts, legal issues, witnesses, and documentary evidence and overlap to such a degree that conducting separate trials would not further the Court's interest in convenience, the avoidance of prejudice, or expeditiously and economically resolving the claims in this action.  Rather, to ensure a fair and impartial trial to all litigants, and absent some other compelling consideration, the claims shall not be tried separately.  The motion to bifurcate is thus denied.

Accordingly, it is

**ORDERED, ADJUDGED** and **DECREED**:

1. "Third-Party Defendant's Motion to Dismiss the Complaint, Compel Arbitration or, in the Alternative, Bifurcate the Third-Party Claims" (Doc. 29) is hereby **GRANTED IN PART AND DENIED IN PART** as follows:

    a.    The Motion to Compel Arbitration is **GRANTED**.

b. The Motion to Dismiss is **DENIED**.

c. The Motion to Bifurcate is **DENIED**.

2. All further proceedings on the complaint and third-party complaint are hereby **STAYED** pending arbitration in London, England, in accordance with the UK Club Rules.  The Court retains jurisdiction over any matters related to the confirmation or enforcement of any award which may be issued in the London arbitration.

3. The parties are directed to provide a status report every 60 days regarding the status of the arbitration.

4. The Clerk is directed to enter the stay and administratively close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>31st</u> day of August, 2023.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**